IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**BENJAMIN CARTER,**

    Plaintiff

v.

**MOUNTAIN VIEW FIRE PROTECTION DISTRICT,**

  and

**DAVID BEEBE, named in his individual and official capacities;**

    Defendants.

Case No.

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Benjamin Carter, by and through his undersigned attorneys, for his Complaint against Defendants, Mountain View Fire Protection District and Fire Chief David Beebe, in both his official and personal capacities, states as follows:

**INTRODUCTION, JURISDICTION AND VENUE**

1.    This is a civil action brought under 42 U.S.C. § 1983 for declaratory and injunctive relief, damages, and attorneys' fees and costs to redress Defendants' unlawful deprivation of Plaintiff's rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution. This action includes supplemental state law claims for declaratory and injunctive relief, damages, and attorneys' fees and costs to redress Defendants' unlawful deprivation of Plaintiff's rights and privileges secured by the United States Constitution and Colorado statute.

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331; 28 U.S.C. § 1343; 28 U.S.C. § 1367; 28 U.S.C. §§ 2201-02; and 42 U.S.C. § 1983.

3. Venue is proper under 28 U.S.C. §1391 because all Defendants are located in this district and the actions and omissions complained of herein took place within this district.

4. In accordance with Colorado Revised Statue § 24-10-109, a Notice of Claim was sent via certified mail, return receipt requested to Pamela Owens, Director of Administration for the Mountain View Fire Protection District, on June 12, 2023. On August 21, 2023, a courtesy copy of the Notice of Claim was sent to Ms. Owens via email, and on August 29, 2023, a courtesy copy of the Notice of Claim was personally served on Ms. Owens by personal service at the workplace to Human Resources Director Gina Daly.

5. As of the date this Complaint was filed, Plaintiff has not received any response to the Notice of Claim.

## PARTIES

6. Plaintiff Benjamin Carter is an individual who resides in Broomfield in Broomfield County, Colorado. Mr. Carter is a "citizen of the United States" within the meaning of 42 U.S.C. § 1983.

7. Defendant Mountain View Fire Protection District ("District") is a fire protection district organized under the laws of the State of Colorado. *See* CO Rev Stat § 32-1-1002. The District provides fire and emergency medical services over a geographic area encompassing Boulder, Dacono, Erie, Mead, Niwot, Superior and unincorporated areas of Boulder and Weld counties. The District is a "person" within the meaning of 42 U.S.C. § 1983.

8. Defendant David Beebe is an individual employed as the Chief of the District. Chief Beebe is a "person" within the meaning of 42 U.S.C. § 1983.

2

**FACTUAL ALLEGATIONS**

9. Plaintiff Carter was hired by the District as a fire fighter in 2009.

10. Since approximately 2012, Plaintiff Carter has held an elected or appointed position on the executive board of the International Association of Fire Fighters, Local 3214 ("Local 3214" or "Union"), the collective bargaining representative of fire fighters employed by the District.

11. In or around October 2019, Defendant Beebe delayed Plaintiff Carter's promotion to Lieutenant because of Carter's having reported a violation of District policy in his capacity as a Union representative.

12. On or around February 26, 2021, Defendant Beebe and Deputy Chief Sterling Folden threatened Plaintiff Carter with discipline for speaking at a public meeting of the District Board as Treasurer of Local 3214.

13. On January 1, 2023, Plaintiff Carter was elected President of Local 3214.

14. On January 30, 2023, Plaintiff Carter went to District Fire Station No. 13 to prepare bunker gear for a group of recently hired new employees, which was part of his duties as Assistant Quartermaster. On this day, Carter was on vacation, but nevertheless reporting to work while using his vacation time in order to complete work tasks that he was unable to complete while on duty, which has been a custom and practice among fire fighters in the District.

15. While at the station, a vendor dropped off equipment for the new hires, and the vendor stated to Carter that one of the new hires requested to not have any American flags placed on their bunker gear.

16. Mr. Carter walked to Captain Shad Bennet's office to speak with him about this request, and Captain Bennet had not heard about the request. Captain Bennet used a speakerphone to call District HR Specialist Gina Daly, who stated that she was the person who submitted the request to the vendor. Plaintiff Carter asked HR Specialist Daly why someone would not want an American flag on their uniform, and Daly replied that it was a religious accommodation that had been approved by Chief Beebe and the District's legal department. Carter then stated that he was unaware of any religion that would require such an accommodation and Daly then informed Plaintiff Carter that the new hire was a Jehovah's Witness.

17. During the speakerphone conversation with Captain Bennet and HR Specialist Daly, Carter asked what other accommodations would be necessary to ensure the comfort of the new hire. Daly responded the new hire could not be assigned to raise or lower the American flag at the station. Carter replied that the Union would need to know of any other accommodations, as well as whether training could be offered to employees on religious accommodation. Daly agreed, stating that the new hire's crew would need extra training.

18. At no time during the speakerphone conversation with Captain Bennet and Plaintiff Carter did Captain Bennet or HR Specialist Daly indicate that any fact concerning the request or provision of the religious accommodation to the new hire was confidential.

19. After the speakerphone conversation with Captain Bennet and HR Specialist Daly, Plaintiff Carter left Captain Shad Bennet's office and spoke with Battalion Chief Flagg about the new employee's religious accommodation. Plaintiff Carter and Battalion Chief Flagg conducted a Google search to research how to accommodate a Jehovah's Witness.

4

20.     In the following days, from January 31, 2023 to February 5, 2023, Plaintiff Carter had several conversations with other fire fighters on and off duty about how to best accommodate the new hire. Battalion Chief Flagg also had conversations with fire fighters about the religious accommodation.

21.     In these conversations with his fellow fire fighters, Plaintiff Carter expressed his concern with the lack of information from the District about how to best accommodate the new hire. He also spoke with other fire fighters about how the department is changing, and they need to appropriately accommodate those who request accommodations.

22.     On February 9, 2023, Plaintiff Carter had a meeting with Chief Beebe concerning a grievance that the Union had filed, unrelated to the new hire or religious accommodation. The meeting was contentious. No more than three hours after the contentious grievance meeting, Deputy Chief Sterling Folden informed Plaintiff Carter that, effective immediately, he was placed on administrative leave pending an investigation into allegedly discriminatory behavior.

23.     On or about February 9, 2023, Plaintiff Carter contacted the District's Human Resources office to inquire about the investigation. The Human Resources office informed him that the purpose of the investigation was to investigate discrimination about a religious accommodation.

24.     Deputy Chief Jeff Webb conducted numerous interviews as part of the investigation, but Plaintiff Carter was never informed of who Deputy Chief Webb interviewed and Plaintiff Carter was not himself interviewed.

5

25. On February 27, 2023, Deputy Chief Webb presented Plaintiff Carter with an evidence summary and stated that Plaintiff Carter could give a statement. Deputy Chief Webb did not ask Plaintiff Carter any questions during this meeting.

26. On the morning of March 21, 2023, Defendant Beebe asked Plaintiff Carter several questions related to the investigation.

27. On March 21, 2023, Plaintiff Carter received a termination letter signed by Chief Beebe. The letter stated that after an investigation, Chief Beebe had decided that Plaintiff Carter should be terminated for disseminating confidential information about a religious accommodation, insubordination, disrespectful attitudes and behaviors, and falsification of records.

28. His March 21, 2023 termination was the first discipline that Plaintiff Carter had received in his fourteen years of employment with the District.

29. Fire Chief Beebe, Deputy Chief Folden, Battalion Chief Flagg and Captain Cody Bennett all of spoke in non-confidential settings about the new hire's religious accommodation, yet did not receive any sort of discipline.

30. Plaintiff Carter's termination letter signed by Chief Beebe stated that "[T]he Fire Chief's decision is the final decision for the District for all purposes. Discipline matters are not appealable to the Board. You have the right to appeal the decision to the Fire Chief based on new or additional information."

31. On or about April 10, 2023, Plaintiff Carter, through counsel, submitted an appeal to Chief Beebe. The appeal stated, inter alia, that "[b]oth Lt. Carter and our office have repeatedly asked for full investigative materials that Chief Webb and the District gathered in the

6

course of its investigation, including the identities of witnesses, and recordings of the numerous witness interviews that Chief Webb conducted, as well as any other materials were examined or considered by the District. The District has refused to provide any of these materials beyond its conclusory summaries of the evidence."

32. On or about April 12, 2023, Plaintiff Carter received a denial of his appeal, signed by Chief Beebe.

33. On or about April 27, 2023, Plaintiff Carter, through counsel, requested a hearing about his termination under the Fourteenth Amendment and through a hearing process that conforms with the requirements of *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

34. On May 5, 2023, the District denied Plaintiff Carter's request for a hearing.

35. On June 22, 2023, Plaintiff Carter and the District were opposing parties at a hearing with a hearing officer to determine Plaintiff Carter's entitlement to unemployment insurance benefits. After weighing all of the evidence asserted against Plaintiff Carter by the District and Plaintiff Carter's credible testimony in response to the District's arguments against him, the "hearing officer concluded the [Plaintiff] was discharged because the employer believed [Plaintiff Carter] disclosed confidential personnel information after being instructed not to do so. There was insufficient persuasive direct evidence to find the claimant acted in the manner asserted."

36. On or about July 11, 2023, the District appealed the hearing officer's decision. On or about August 2, 2023, the Colorado Department of Labor and Employment's Industrial Claim Appeals Panel affirmed the June 22, 2023 hearing officer's decision and determined that the

7

hearing officer accurately "found that [Plaintiff Carter] did not engage in the alleged misconduct that caused the discharge."

37. Any grounds and reasons offered by Defendants for their adverse actions, omissions, and decisions against Plaintiff Carter are false and pretextual.

38. As a result of the Defendants' knowing, willful, wanton, reckless, and bad faith termination of his employment and deprivation of rights, Mr. Carter has suffered lost wages and benefits, mental and emotional harm, damage to his personal and professional reputations, and other injuries.

**FIRST CAUSE OF ACTION:**
**42 U.S.C. § 1983 --- VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS**

39. Plaintiff Carter realleges and incorporates the allegations set forth in paragraphs 1 through 38.

40. The Fourteenth Amendment to the United States Constitution protects citizens from the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, 1.

41. The collective bargaining agreement that governed the terms and conditions of Plaintiff Carter's employment provides at Article XXI, Section 12, that he may only be terminated for just cause.

42. Plaintiff Carter has a property interest in his employment with the District.

43. Defendants, under color of law, intentionally deprived Plaintiff Carter of his property interest in his employment with the District without affording him due process of law.

44. Defendants did not afford Plaintiff Carter a post-termination hearing, an opportunity to be represented by counsel, an opportunity to review and counter adverse evidence,

an opportunity to confront accusers or cross examine adverse witnesses, or a neutral review of the decision to terminate his employment.

45. These actions, omissions, and decisions of the Defendants individually, separately, and/or jointly, were designed to cause, have caused, and will continue to cause Plaintiff Carter to lose wages, compensation, entitlements, and rights. In addition, these actions, omissions, and decisions of the Defendants individually, separately, and/or jointly, were designed to cause, have caused, and will continue to cause Plaintiff Carter to suffer humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, financial, and other adverse consequences and irreparable harms.

46. Defendants' violation of Plaintiff Carter's right to due process was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

47. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff Carter has suffered, and continues to suffer, economic injury, mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, and other injuries and irreparable harms.

48. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for his injuries resulting from

9

Defendants retaliating against him and terminating his employment in violation of the Fourteenth Amendment.

49. Defendants are also liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## SECOND CAUSE OF ACTION:
## 42 U.S.C § 1983 – VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHTS TO FREE SPEECH AND ASSEMBLY

50. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 49.

51. The right of Plaintiff Carter to speak freely about matters of public concern is protected by the First Amendment and Fourteenth Amendments to the United States Constitution. U.S. Const. amend. I, amend. XIV, 1. The public has a vital interest in free and open discussion on issues of public importance.

52. It is a violation of the First Amendment and Fourteenth Amendment of the United States Constitution for public employers, including the District, to discriminate against, discipline, or discharge its employees in retaliation for engaging as private citizens in speech about matters of public concern.

53. At all times material herein, Plaintiff Carter actively spoke out on matters of public concern, including, but not limited to, statements made to ensure that District policies were followed and that he and his fellow employees were able to assist with a newly hired employee's religious accommodation.

54. Upon learning that Plaintiff Carter had spoken out on such matters of public concern, Defendants, acting under color of law, individually, separately, and/or jointly, engaged in actions, omissions, and decisions aimed at denying Plaintiff Carter's employment rights and

10

protections granted to him under law, including, but not limited to, investigating, retaliating against and reprimanding him, and terminating his employment.

55. These actions, omissions, and decisions of the Defendants individually, separately, and/or jointly, were designed to cause, have caused, and will continue to cause Plaintiff Carter to lose wages, compensation, entitlements, and rights. In addition, these actions, omissions, and decisions of the Defendants individually, separately, and/or jointly, were designed to cause, have caused, and will continue to cause Plaintiff Carter to suffer humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, financial, and other adverse consequences and irreparable harms.

56. Defendants' violations of Plaintiff Carter's rights to free speech and assembly were done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

57. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for his injuries resulting from Defendants retaliating against and terminating him in violation of the First and Fourteenth Amendments.

58. Defendants are also liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

11

### THIRD CAUSE OF ACTION:
### 42 U.S.C. § 1983 – VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHT TO FREE ASSOCIATION

59. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 58.

60. The right of Plaintiff Carter to freely associate with other District employees and/or a labor association of other District employees is protected by the First Amendment and Fourteenth Amendment of the U.S. Constitution. The public has a vital interest in such free association.

61. It is a violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution for public employers, including the District, to discriminate against, discipline, or discharge its employees for exercising their rights to free association.

62. At all relevant times, Plaintiff Carter has held a leadership position in Local 3214 and was elected its President shortly before his termination. Plaintiff Carter has organized, led, and actively participated in the Union and its related activities involving matters of public interest and concern.

63. Because of Plaintiff Carter's service in leadership and active participation in the affairs of the Union, including but not limited to attempts to resolve collective bargaining disputes, Defendants, acting under color of law, individually, separately, and/or jointly, engaged in actions, omissions and decisions aimed at denying the rights and protections granted under law to Plaintiff Carter, including, but not limited to, investigating, retaliating against and reprimanding him, and terminating his employment with the District.

64. These actions, omissions, and decisions of the Defendants individually, separately, and/or jointly, were designed to cause, have caused, and will continue to cause Plaintiff Carter to lose wages, compensation, entitlements, and rights. In addition, these actions, omissions, and

decisions of the Defendants individually, separately, and/or jointly, were designed to cause, have caused, and will continue to cause Plaintiff Carter to suffer humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, financial, and other adverse consequences and irreparable harms.

65. Defendants' violations of Plaintiff Carter's rights to free association were done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

66. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff Carter for his injuries resulting from Defendants retaliating against and terminating him in violation of the First and Fourteenth Amendment.

67. Defendants are also liable for Plaintiff Carter's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### FOURTH CAUSE OF ACTION:
### VIOLATION OF THE COLORADO FIREFIGHTER SAFETY ACT

68. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 67.

69. Under the Colorado Firefighter Safety Act, firefighters have the right to engage in concerted protected activity for mutual aid and protection. The Act provides, in relevant part:

(1) Firefighters have the right to:

13

> (a) Organize, form, join, or assist an employee organization or to refrain from doing so;
>
> . . .
>
> (c) Engage in other concerted activity for the purpose of collective bargaining or other mutual aid or protection, if and to the extent that the activity is not prohibited by this part 2 or any other law of Colorado.

CO Rev Stat § 29-5-204.

70. Plaintiff Carter engaged in significant union activities from acting as Local President, to representing the Local in contentious collective bargaining negotiations to representing members in grievance meetings. Plaintiff Carter also engaged in protected concerted activity for the mutual aid and protection of his co-workers by discussing an employee's religious accommodation with them to ensure a new employee's accommodation. President Carter's protected union activities were well known to the Defendants.

71. The Defendants have demonstrated hostility toward Plaintiff Carter because of his protected union activity on a number of occasions.

72. The Defendants' decision to terminate Plaintiff Carter's employment and deny him due process were motivated by President Carter's protected union activities.

73. The Defendants' decision to terminate Plaintiff Carter's employment serves to not only chill his protected union activity but that of other employees who were inclined to support the Union or act on their co-workers' behalf.

74. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff Carter has suffered, and continues to suffer, economic injury, mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, and other injuries and irreparable harm.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable, as provided by Federal Rule of Civil Procedure 38.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff respectfully requests the Court:

A. Declare that Defendants unlawfully violated Plaintiff's rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution;

B. Declare that Defendants unlawfully violated Plaintiff and his fellow union fire fighters' rights and privileges secured by the Colorado Firefighter Safety Act;

C. Enter a permanent injunction restraining and preventing Defendants from continuing to discriminate and retaliate against Plaintiff, from continuing to interfere with and infringe upon Plaintiff's rights under the First and Fourteenth Amendments of the U.S. Constitution, and from otherwise violating their obligations under the U.S. Constitution with respect to Plaintiff and all other persons similarly situated;

D. Enter a permanent injunction restraining and preventing Defendants from continuing to discriminate and retaliate against Plaintiff, from continuing to interfere with and infringe upon Plaintiff's rights under the Colorado Firefighter Safety Act, and from otherwise violating Defendants' obligations under the Colorado Firefighter Safety Act with respect to Plaintiff and all other persons similarly situated;

E. Order Defendants to rescind the retaliatory, discriminatory, and unlawful discipline issued to Plaintiff;

F. Order a complete and accurate accounting of all the compensation and relief to which Plaintiff is entitled;

G. Award Plaintiff monetary damages in the form of backpay compensation, including lost benefits that would have been paid by the District but for the unlawful termination of Plaintiff's employment, unpaid entitlements, plus prejudgment and post-judgment interest;

H. Award Plaintiff compensatory damages for the violations of Plaintiff's rights, his unlawful termination, and the harm to his reputation, humiliation, emotional and mental anguish, and for other financial and consequential harm and injuries he has suffered as a result of Defendants' violative conduct;

I. Award Plaintiff punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' violation of Plaintiff's Constitutional rights;

J. Award Plaintiff punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' violation of the Colorado Firefighter Safety Act;

K. Order Defendants to reinstate Plaintiff to his former position;

L. Order Defendants to provide notice to all employees of the District that the termination of Plaintiff's employment violated the Colorado Firefighter Safety Act and the Constitution, and that Defendants will not violate the Colorado Firefighter Safety Act.

M. Award reasonable attorneys' fees and costs to Plaintiff; and

N. Grant all other relief that the Court deems just and appropriate.

Respectfully submitted,

*/s/ Naomi Y. Perera*
Naomi Y. Perera
Kelman Buescher Firm
600 Grant Street, Suite 450
Denver, Colorado 80203

*Counsel for the Plaintiff*

        Arthur Traynor
        Jamie Eisner
        Mooney, Green, Saindon, Murphy & Welch, P.C.
        1920 L Street NW, Suite 400
        Washington, DC 20036
        *application for pro hac vice forthcoming*

Plaintiff's Address:

Benjamin Carter
1960 Bellaire Street
Broomfield, CO  80020